# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
AMERICAN FEDERATION                                    )
OF GOVERNMENT EMPLOYEES,              )
AFL-CIO, LOCAL 3669,                               )
                                                                      )
             Plaintiff,                                  )
                                                                      )
      v.                                                     )       Civil Action No. 08-1722  (RBW)
                                                                      )
ERIC K. SHINSEKI,                                       )
Secretary of Veterans Affairs, and              )
ROBERT A. PETZEL,                                   )
Under Secretary for Health,                         )
Department of Veterans Affairs,                   )
                                                                      )
             Defendants.                           )
_____)

## MEMORANDUM OPINION

The plaintiff in this civil lawsuit, the American Federation of Government Employees,

AFL-CIO, Local 3669 (the "Union"), seeks reversal of a decision issued by the Under Secretary

for Health of the Department of Veterans Affairs (the "Under Secretary") on behalf of the

Secretary of Veterans Affairs (the "Secretary") pursuant to the Administrative Procedure Act

("APA"), 5 U.S.C. § 702 (2006).  First Amended Complaint for Injunctive and Declaratory

Relief ("Am. Compl.") ¶¶ 48-63.  Currently before the Court is the Secretary's motion to dismiss

or, in the alternative, his motion for summary judgment ("Def.'s Mot."), and the Union's cross-

motion for summary judgment.  Upon careful consideration of the first amended complaint, the

parties' cross-motions, all memoranda of law and exhibits relating to those motions, and the

administrative record,[1] the Court concludes that it must deny the Secretary's motions and grant in

part and deny in part the Union's cross-motion for summary judgment.

## I. BACKGROUND

**A.     Statutory Framework**

This case concerns the interplay between two statutory schemes: the Federal Sector Labor

Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101-7135 (2006), which governs

federal employees' labor relations generally, and chapter 74 of title 38 of the United States Code,

which governs the terms and conditions of employment of Veterans Health Administration

("VHA") personnel,[2] 38 U.S.C. §§ 7401-7474 (2006) ("VHA personnel statute").  The FSLMRS

authorizes the Federal Labor Relations Authority ("FLRA") to adjudicate "unfair labor practice"

complaints stemming from alleged violations of labor rights provided by the FSLMRS, 5 U.S.C.

§ 7118, including the right of collective bargaining, see id. § 7116(a).  Those labor rights do not

necessarily apply with full force to VHA medical professionals, however, as the VHA personnel

statute makes clear that "[n]otwithstanding any law, Executive order, or regulation, the Secretary

shall prescribe by regulation the hours and conditions of employment and leaves of absence of

---

[1]  In addition to the documents already identified, the Court considered the following submissions in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Def.'s Mem."), (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment and Memorandum of Points and Authorities in Support of Both ("Pl.'s Mem."), (3) the Defendant's Reply in Support of the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion ("Def.'s Reply & Cross-Opp'n"), (4) the Plaintiff's Reply Brief to Defendants' Response to Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Cross-Reply"), and (5) the Defendant's Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Stmt.").

[2]  The VHA is a component of the Department of Veterans Affairs.

employees appointed under any provision of this chapter in positions in the Veterans Health Administration listed in subsection (b)."[3]  38 U.S.C. § 7421(a).

In 1998 in <u>Colorado Nurses Ass'n v. FLRA</u>, 851 F.2d 1486 (D.C. Cir. 1988), the District of Columbia Circuit construed § 7421(a) of the VHA personnel statute as granting the Secretary "unfettered discretion" to establish regulations regarding the working conditions of VHA medical professionals, and consequently held that such employees had no collective bargaining rights under the FSLMRS.  <u>Id.</u> at 1492.  Congress thereafter passed legislation in 1991 declaring that VHA medical professionals would, in fact, have largely the same rights of collective bargaining as other federal employees.  <u>See</u> Department of Veterans Affairs Health-Care Personnel Act, Pub. L. No. 102-40, title II, § 202, 105 Stat. 187, 200 (1991), <u>codified at</u> 38 U.S.C. § 7422(a).  As the statute now provides:

> Except as otherwise specifically provided in this title, the authority of the Secretary to prescribe regulations under section 7421 of this title is subject to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5 (relating to labor-management relations) [i.e., the FSLMRS].

38 U.S.C. § 7422(a).  The VHA personnel statute does, however, impose the following three limitations on the FSLMRS collective bargaining rights accorded to VHA medical professionals:

> Such collective bargaining (and any grievance procedures provided under a collective bargaining agreement) in the case of employees described in section 7421(b) of this title may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title.

---

[3] The positions listed in subsection (b) of § 7421 include medical professionals such as "[p]hysicians," "[d]entists," and, as is most relevant here, "[r]egistered nurses."  38 U.S.C. § 7421(b).  For ease of reference, the Court will refer to these employees as "VHA medical professionals" throughout this Memorandum Opinion.

Id. § 7422(b).  Pursuant to 38 U.S.C. § 7422(d), the Secretary has exclusive authority to

determine whether a matter falls under one of § 7422(b)'s collective bargaining exceptions:

> An issue of whether a matter or question concerns or arises out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title shall be decided by the Secretary and is not itself subject to collective bargaining and may not be reviewed by any other agency.

Id. § 7422(d).  The Secretary has delegated his § 7422(d) authority to the Under Secretary.  Am.

Fed'n of Gov't Employees, Local 446 v. Nicholson, 475 F.3d 341, 345 (D.C. Cir. 2007).

## B.   Factual and Procedural Background

The following facts are not in dispute and are taken from either the Union's first amended

complaint or the administrative record ("A.R.") filed in this case.  The Union is designated as the

exclusive labor organization representative for registered nurses at the Department of Veterans

Affairs' Medical Center in Minneapolis, Minnesota (the "Medical Center").  Am. Compl. ¶ 4.  In

December 2007,[4] a labor arbitration hearing was held concerning the potential termination of

Belinda Savage, a respiratory therapist employed by the Medical Center.  Id. ¶ 9; A.R.,

Attachment ("Attach.") L (September 2, 2008 decision paper) at 2.  Three registered nurses

testified at the arbitration hearing: Anita Krehnke, Barb Galle, and Karen Rafter.  Am. Compl. ¶¶

10-11.  Krehnke testified that Savage had failed to follow proper procedures in providing

medical care to patients.  Id. ¶ 10.  Galle and Rafter, both members of the Union, provided

testimony regarding Krehnke's performance as a nurse at the Medical Center.  Id. ¶¶ 12, 14.

According to Jason Rudie, the attorney who represented the Medical Center at the hearing, Galle

testified that Krehnke "was lazy and not a good nurse, or words to that effect," and Rafter said

---

[4] The record is unclear as to the exact date of the arbitration hearing.  Compare Am. Compl. ¶ 9 (alleging that the hearing occurred "[o]n or about December 7, 2007"), with Def.'s Stmt. (stating that the hearing was held "[o]n or about December 12, 2007").   This date is, however, immaterial to the resolution of the parties' cross-motions.

that "in her opinion" Krehnke "practices below the standard of care."  A.R., Attach. B (Declaration of Jason Rudie) ¶¶ 1-3; Am. Compl. ¶ 16.

Rudie reported his observations concerning the nurses' testimony to the Medical Center's "Nurse Executive," Christine Lund, who thereafter issued two identical memoranda to Galle and Rafter.  Am. Compl. ¶¶ 16-17.  Both memoranda contained the subject line "[r]eporting obligations" and stated that "[d]uring an arbitration session last week, I understand that you made several statements that called into question the clinical practice of a fellow nurse."  A.R., Attach. C (December 18, 2007 Memorandum to Rafter); id., Attach. D (December 18, 2007 Memorandum to Galle).  The memoranda went on to recite the "requirement[s] for reporting licensed nurses," which Nurse Executive Lund summarized as follows: "If you have knowledge that a RN is incompetent, unprofessional, unethical or unable to practice safely, you have an obligation to report that information to [the Nurse Executive] or a manager so that the procedures outlined in VHA Handbook 1100.18 Reporting and Responding to State Licensing Boards may be initiated."  Id.  Nurse Executive Lund concluded by stating that "I will be scheduling some time with you to discuss your specific allegations.  Please be advised that failure to report practice as noted above is grounds for disciplinary action."  Id.

On January 11, 2008, the Union filed two unfair labor practice charges with the FLRA against the Medical Center based on the statements made by Nurse Executive Lund in her memoranda.  Am. Compl. ¶ 22.  Emphasizing that Nurse Executive Lund "demanded to meet" with Rafter and Galle and "stated that [they] could be subject to disciplinary action," the Union's unfair labor practice charges asserted that "management's actions" constituted unlawful "reprisal" for Rafter's and Galle's "testimony on behalf of the Union [at the arbitration hearing]

and [was] an attempt to intimidate all employees." A.R., Attach. E (FLRA Charge Against Agency for Rafter); id., Attach. F (FLRA Charge Against Agency for Galle).

While the Union's charges were pending before the FLRA, the Medical Center requested that the Under Secretary issue a ruling under 38 U.S.C. § 7422(d) that the Union's unfair labor practice charges fell into the collective bargaining exclusion for matters concerning "professional conduct or competence." Am. Compl. ¶ 28; see 38 U.S.C. § 7422(b)(1) (excluding from "collective bargaining" and "any grievance procedures provided under a collective bargaining agreement . . . any matter or question concerning or arising out of . . . professional conduct or competence"). The Union submitted an opposition to the Medical Center's request, contending, among other things, that because the charges raised neither "an issue of 'collective bargaining'" nor "a matter of 'grievance procedure' coverage" within the meaning of § 7422(b), the Under Secretary had no statutory authority under § 7422(d) "to apply any of the [§] 7422(b) exclusions." A.R., Attach. J (Memorandum in Opposition to Request of VAMC Minneapolis ("Pl.'s Admin. Opp'n")) at 2. Rather than relating to collective bargaining, the Union argued that its charges concerned whether the Medical Center "interfered with the statutory right of unit employees to support their union in a labor arbitration by issuing threatening memos to those employee." Id.; see 5 U.S.C. § 7102 (providing that "[e]ach employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right.").

On September 2, 2008, the Under Secretary issued a "Title 38 Decision Paper" finding that the "Unfair Labor Practice charges filed by [the Union] alleging reprisal for [the] testimony provided by [Rafter and Galle] on behalf of the [U]nion" at the arbitration hearing "ar[o]se out of

professional conduct or competence within the meaning of 38 U.S.C. § 7422(b)."  A.R., Attach.

L (September 2, 2008 decision paper) at 6.  Noting that "the Minnesota Board of Nursing

reporting obligations . . . require individual nurses to report personal knowledge of any conduct

by another nurse that might be evidence of incompetence, unprofessional [or] unethical conduct,

or evidence that another nurse is unable to practice safely," id. at 5, the Under Secretary reasoned

that the Medical Center's investigation of the comments allegedly made by Galle and Rafter at

the arbitration hearing "ar[o]se out of management's investigation concerning Krehnke's

professional competence," and that "an inquiry as to whether clinical staff had knowledge of

shortcomings regarding either the quality of direct patient care being provided or the clinical

competence of another provider[] is a matter concerning or arising out of professional conduct or

competence," id. at 6.  The September 2, 2008 decision paper did not address the Union's

threshold argument that the Under Secretary had no statutory authority to apply the § 7422(b)(1)

collective bargaining exclusion because, as the Union saw it, the unfair labor practice charges

were unrelated to collective bargaining.

      The Union then filed its complaint in this Court on October 10, 2008, asserting that the

Under Secretary exceeded his statutory authority in the September 2, 2008 decision paper.

Complaint for Injunctive and Declaratory Relief ¶¶ 45-48.  Upon consideration of the parties'

cross-motions for summary judgment, the Court issued a Memorandum Opinion on August 28,

2009, concluding that the "Under Secretary failed to address" the Union's argument that he

"lacks authority to apply any [§] 7422(b) exclusion in the first place . . . because the scope of the

exclusions set forth in § 7422(b) apply only to collective bargaining and grievance procedures

arising out of collective bargaining and the charges filed by the [Union] with the [FLRA] do not,

in [the Union's] view, implicate the collective bargaining process."  Am. Fed'n of Gov't Emp.'s,

Local 3669 v. Shinseki, 648 F. Supp. 2d 87, 93 (D.D.C. 2009) (internal quotation marks
omitted).  Because the Court found that "[t]he Under Secretary's failure to address this issue in
his decision constitute[d] reversible error," it "reverse[d] the Under Secretary's decision, and
remand[ed] this case to the Department of Veterans Affairs for a determination as to whether the
charges filed by the [Union] with the [FLRA] qualify as 'collective bargaining' or 'grievance
procedures provided under a collective bargaining agreement' within the meaning of § 7422(b)."
Id. at 94-95.

　　　　Following the Court's remand, the Under Secretary issued a new decision paper on
March 31, 2010 ("March 2010 § 7422 Decision").  Def.'s Mot., Exhibit ("Ex.") 1 (March 31,
2010 decision paper).  The Under Secretary reached three conclusions in his March 2010 § 7422
Decision: (1) "The Unfair Labor Practice charges filed by [the Union] alleging reprisal for
testimony provided by [Rafter and Galle] on behalf of the [U]nion" at the arbitration hearing
"qualify as 'collective bargaining' within the meaning of 38 U.S.C. § 7422(b)"; (2) insofar as the
Union's charges relate to Nurse Executive Lund's "letters to and investigative meetings with
[Rafter and Galle] concerning the professional conduct and competence of [§] 7421(b)
employees," the charges "concern or arise out [of] professional conduct or competence within
the meaning of 38 U.S.C. § 7422(b)"; and (3) insofar as the Union's charges relate to Nurse
Executive Lund's "letters to and investigative meetings with [Rafter and Galle] concerning
issues that were unrelated to the professional conduct and competence of [§] 7421(b)
employees," the charges "do not concern or arise out [of] professional conduct or competence
within the meaning of 38 U.S.C. § 7422(b)."  Id. at 10-11 (emphasis added).[5]

---

[5] The reasoning underlying the Under Secretary's March 2010 § 7422 Decision is discussed in greater detail in Part
III, infra, of this Memorandum Opinion.

The Union then filed its first amended complaint in this Court challenging the Under Secretary's March 2010 § 7422 Decision.  Count I of the amended complaint alleges that the defendants have "violated, misinterpreted[,] and misapplied § 38 U.S.C. § 7422(b) and (d)" because "the March 31, 2010 decision paper . . . applies the 38 U.S.C. § 7422(b)(1) exclusion to a scenario that does not qualify as or pertain to either 'collective bargaining' or to 'grievance procedures provided under a collective bargaining agreement' within the meaning of 38 U.S.C. § 7422(b)."  Am. Compl. ¶ 51.  Based on the agency's purported misapplication of § 7422(b)(1), Count I asserts that the defendants actions were "outside the scope of their authority" and should therefore be set aside under 5 U.S.C. § 706(2)(C), the provision of the APA which directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  See id ¶ 52.  Similarly, Count II of the amended complaint claims that the defendants' alleged misapplication of the § 7422(b)(1) exclusion to a matter unrelated to collective bargaining constitutes agency action that is "arbitrary and capricious, an abuse of discretion, and otherwise in violation of the law" under a separate provision of the APA, 5 U.S.C. § 706(2)(A).  Id. ¶ 54.  Counts III and IV of the amended complaint allege that the defendants further violated these same two provisions of the APA by misapplying the § 7422(b)(1) exclusion to a question unrelated to "professional conduct or competence."  Id. ¶¶ 58-61.  Finally, Count V of the amended complaint asserts a separate violation of APA § 706(2)(A) based on the Under Secretary's alleged assumptions regarding the veracity of the Medical Center's assessment of Galle's and Rafter's testimony.  Id. ¶¶ 63.  The Union requests the following relief: (1) "An order declaring that the defendants' March 31, 2010 decision [paper] was issued without legal authority and is an unlawful application of the cited statutory provisions"; (2) "[a] preliminary

9

and permanent injunction enjoining [the] defendants from issuing any 38 U.S.C. § 7422(d) ruling

that applies a 38 U.S.C. § 7422(b) exclusion to the subject labor practice[] charges filed by the

[Union] with the FLRA"; (3) an order directing the "defendants to withdraw the March 31, 2010

decision, as well as any and all decisions applying 38 U.S.C. [§] 7422(b) exclusions to the

subject unfair labor practice[s] charges filed by the [Union] with the FLRA"; and (4) reasonable

attorney's fees and costs to be paid by the defendants.  Id. at 12.

On April 21, 2011, the Secretary moved for dismissal pursuant to Federal Rule of Civil

Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  In support

of his motion, the Secretary contends that the March 2010 § 7422 Decision was lawful because

the Union's unfair labor practice charges "qualify as collective bargaining within the meaning of

38 U.S.C. § 7422(b)."  Def.'s Mem. at 2.  The Secretary further argues that the charges "arose

out of professional conduct or competence within the meaning of 38 U.S.C. § 7422(b)," and thus

the agency's "investigation into the allegations concerning the alleged substandard clinical

competence of a [VHA] nurse was not subject to collective bargaining."  Id.  The Secretary also

contends that the March 2010 § 7422 Decision is entitled to deference under Chevron U.S.A.,

Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  Id.  The Union filed a

consolidated response in opposition to the Secretary's motion and a cross-motion for summary

judgment on May 26, 2011, reasserting each argument it raised at the agency level and claiming

entitlement to judgment as a matter of law.  See generally Pl.'s Mem.

## II.  STANDARD OF REVIEW

As noted, the Secretary has moved for dismissal pursuant to Federal Rule of Civil

Procedure Rule 12(b)(6) and alternatively moves for summary judgment under Rule 56.  Rule

12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  Because both parties have presented materials outside the pleadings (namely, the administrative record) for the Court to consider in adjudicating their motions, the Court deems it appropriate to treat both of their motions as motions for summary judgment.  See Marshall Cnty. Health Care. Auth. v. Shalala, 988 F.2d 1221, 1226 & n.5 (D.C. Cir. 1993) (noting that a district court considering a Rule 12(b)(6) motion "can consult the [administrative] record to answer the legal question[s] before the court," but that "[i]t is probably the better practice for a district court always to convert to summary judgment." (emphasis added)).

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)); see also Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).  However, due to the limited role of a court in reviewing the administrative record, the typical summary judgment standards set forth in Rule 56(c) are not applicable.  Stuttering, 498 F. Supp. 2d at 207 (citation omitted). Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Id. (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985)).

## III.  ANALYSIS

The Court must evaluate the threshold determination made by the Under Secretary in his March 2010 § 7422 Decision: that the Union's unfair labor practice charges implicate matters of "collective bargaining" within the meaning of 38 U.S.C. § 7422(b).  If this decision was incorrect, then the Under Secretary exceeded his § 7422(d) authority by applying the § 7422(b)(1) collective bargaining exclusion for matters concerning "professional conduct or competence" to the Union's charges.  Before reaching this issue, though, the Court must determine what degree of deference, if any, it owes to the Under Secretary's statutory interpretation.

**A.      Degree of Deference Owed to the Under Secretary's Determination**

When reviewing an agency's interpretation of a statute it is charged with administering, courts must apply the familiar two-step framework formulated by the Supreme Court in <u>Chevron</u>.  At step one of the <u>Chevron</u> analysis, the court must determine "whether Congress has directly spoken to the precise question at issue."  <u>Chevron</u>, 467 U.S. at 842.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Id.</u> at 842-43.  If, however, the Court concludes that the statute is either silent or ambiguous as to the precise question at issue, it must proceed to <u>Chevron</u> step two to determine whether the interpretation proffered by the agency is "based on a permissible construction of the statute."  <u>Id.</u> at 843.  At this second step the Court must defer to agency interpretations that are not "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."  <u>United States v. Mead Corp.</u>, 533 U.S. 218, 227 (2001) (citing <u>Chevron</u>, 467 U.S. at 844).

According to the Secretary, <u>Chevron</u> deference should apply to the Under Secretary's decision that the Union's unfair labor practice charges relate to matters of "collective bargaining" because "38 U.S.C. § 7422(d) provides authority for the [Secretary] to make a determination concerning whether the [unfair labor practice charges] at issue fall within one of the enumerated exceptions to the general right to collective bargaining." Def.'s Mem. 14. The Union responds that the Court is not obligated to accord <u>Chevron</u> deference to the Under Secretary's ruling insofar as he interpreted provisions of the FSLMRS, a statute which the FLRA, not the Secretary, is charged with administering. <u>See</u> Pl.'s Cross-Reply at 2-4. The Court agrees with the Union.

Section 7422(d) plainly authorizes the Secretary (or his designee) to determine whether a given "collective bargaining" issue relates to one of the three matters excluded from collective bargaining under § 7422(b): "(1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation." 38 U.S.C. § 7422(d). But the Under Secretary did more than that here; rather, his March 2010 § 7422 Decision addressed the logically precedent question of whether the matters raised in the Union's unfair labor practice charges qualify as "collective bargaining." <u>See</u> Def.'s Mot., Ex. 1 (March 31, 2010 decision paper) at 10. In making this determination, the Under Secretary interpreted provisions of the FSLMRS and ultimately found that unfair labor practice charges are, as a general matter, part of the "collective bargaining process established by the FSLMRS." <u>Id.</u> at 7 (citing 5 U.S.C. §7116). He necessarily relied upon the FSLMRS in reaching this conclusion because 38 U.S.C. § 7422 incorporates the term "collective bargaining" as that term is used in the FSLMRS. <u>See</u> 38 U.S.C. § 7422(a) (granting VHA medical professionals the right "to engage in collective bargaining with respect to conditions of employment through

representatives chosen by them <u>in accordance with chapter 71 of title 5</u> [i.e., the FSLMRS]"

(emphasis added)); <u>see also</u> <u>Nicholson</u>, 475 F.3d at 345 ("38 U.S.C. § 7422(a) gives [VHA]

medical professionals the right to bargain according to the rules set out in chapter 71 of title 5

[i.e., the FSLMRS], subject to limitations 'specifically provided' in title 38.").  Thus, insofar as

the Under Secretary's decision rested on an interpretation of the FSLMRS—a statute that the

Department of Veterans Affairs is not charged with administering—his decision is not entitled to

<u>Chevron</u> deference.  Cf. <u>U.S. Dep't of Veterans Affairs v. FLRA</u>, 9 F.3d 123, 126 (D.C. Cir.

1993) ("we owe no deference to the FLRA's statutory interpretation where it has endeavored to

'reconcile its organic statute [i.e., chapter 71 of title 5—the Federal Service Labor-Management

Relations Act] with a[nother] statute [i.e., title 38] not within its area of expertise.'" (quoting

<u>Colorado Nurses</u>, 851 F.2d at 1488) (alterations in original)).  The Under Secretary's decision is

nonetheless "entitled to respect," but only to the extent that his statutory interpretation has the

"power to persuade."  <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944); <u>see</u> <u>Power v.</u>

<u>Barnhart</u>, 292 F.3d 781, 786 (D.C. Cir. 2002) ("Under <u>Skidmore</u>, we grant an agency's

interpretation only so much deference as its persuasiveness warrants." (citation omitted)).

**B.     Whether the Union's Unfair Labor Practice Charges Qualify as Matters of "Collective Bargaining"**

        While acknowledging the Secretary's authority to deem certain matters excluded from

collective bargaining pursuant to 38 U.S.C. § 7422(d), the Union argued at the agency level, as it

does now, that its unfair labor practice charges alleging reprisal for Rafter's and Galle's

testimony at the arbitration hearing do not implicate matters of "collective bargaining" within the

meaning of § 7422(b).  A.R., Attach. J (Pl.'s Admin. Opp'n) at 2.  Specifically, the Union

asserted that "one of the matters clearly unaffected by the [§] 7422(b) exclusions is the right of

any federal employee, including a VA professional employee, 'to form, join, or assist any labor

organization' under 5 U.S.C. § 7102" of the FSLMRS, and that unfair labor practice charges

premised on violations of § 7102 rights are therefore outside the scope of 38 U.S.C. § 7422.  Id.

At issue in this case, the Union continued, is whether the Medical Center "interfered with the

statutory right [under 5 U.S.C. § 7102] of unit employees to support their union in a labor

arbitration by issuing threatening memos to those employees."  Id.  "This is not an issue of

'collective bargaining'" under § 7422(b), according to the Union, and so the "subject matter of

the unfair labor practice charges do[] not meet the subject matter criteria for application of the

[§] 7422(b) exclusions."  Id.; see also Pl.'s Mem. at 22 ("the making of statements to Galle and

Rafter, as well as any subsequent inquiry or interview of Galle and Rafter, does not pertain to

"collective bargaining" or "grievance procedures" as those terms are used in [§] 7422(b)").

Thus, the Union argued, the defendants had no authority under § 7442(d) to apply the §

7422(b)(1) collective bargaining exclusion to the unfair labor practice charges.  A.R., Attach. J

(Pl.'s Admin. Opp'n) at 2.

In his March 2010 § 7422 Decision, the Under Secretary noted initially that unfair labor

practice charges filed under 5 U.S.C. § 7116 of the FSLMRS "are a vital enforcement

mechanism available to agencies, unions, and employees."  Def.'s Mot., Ex. 1 (March 31, 2010

decision paper) at 7.  He then determined, contrary to the Union's contention that labor rights

under 5 U.S.C. § 7102 are unaffected by the 38 U.S.C. § 7422(b) collective bargaining

exclusions, that "[a]n employee or union's right to file an [unfair labor practice charge] under 5

U.S.C. § 7116" as well as "an employee's right to 'join, form, or assist any labor organization . .

.' under 5 U.S.C. § 7102" are both "tied to collective bargaining" as that term is used in the

FSLMRS and the VHA personnel statute.  Id.  And because all unfair labor practice charges are,

in the Under Secretary's view, "part of the general collective bargaining process established by

the FSLMRS," he found that § 7422(b) was applicable to the Union's charges.  Id.  He further

concluded that "the provisions of the FSLMRS cannot trump 38 U.S.C. § 7422 because where,

as here, the provisions of the FSLMRS conflict with the provisions of [t]itle 38, the [t]itle 38

provisions control."  Id. at 8 (citing 38 U.S.C. § 7425(b)).[6]

The Court finds unpersuasive the Under Secretary's conclusion that all unfair labor

practice charges filed under 5 U.S.C. § 7116 "are part of the general collective bargaining

process."  See id. at 7.  The FSLMRS defines "collective bargaining" as "the mutual obligation"

of the agency and union "to consult and bargain in a good-faith effort to reach agreement with

respect to the conditions of employment."  5 U.S.C. § 7103(a)(12).  Regarding unfair labor

practice charges, the FSLMRS authorizes the filing of a charge against an agency that has

engaged in any of the eight "unfair labor practice[s]" listed at 5 U.S.C. § 7116(a)(1)-(8).  Among

these "unfair labor practice[s]" are actions taken by an agency "to interfere with, restrain, or

coerce any employee in the exercise by the employee of any right under this chapter," id. §

7116(a)(1), "to encourage or discourage membership in any labor organization by discrimination

in connection with hiring, tenure, promotion, or other conditions of employment," id. §

7116(a)(2), or—in specific reference to collective bargaining—"to refuse to consult or negotiate

in good faith with a labor organization as required by this chapter," id. § 7116(a)(5).  In other

words, some unfair labor practice charges relate to collective bargaining, but not all of them do.

Indeed, nothing in the FSLMRS indicates that the right of an employee or union to file an unfair

---

[6] 38 U.S.C. § 7425(b) provides in its entirety:

Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to
the civil service system which is inconsistent with any provision of section 7306 of this title or this
chapter shall be considered to supersede, override, or otherwise modify such provision of that
section or this chapter except to the extent that such provision of title 5 or of such other law
specifically provides, by specific reference to a provision of this chapter, or such provision to be
superseded, overridden, or otherwise modified.

labor practice charge is necessarily part of the collective bargaining process.[7]  The right to file

such a charge is instead a statutory right created by the FSLMRS—one that exists apart from

"the mutual obligation" of the agency and union "to consult and bargain in a good-faith effort to

reach agreement with respect to the conditions of employment."  See 5 U.S.C. § 7103(a)(12).

Nor does the Court find persuasive the Under Secretary's conclusion that the labor rights

conferred by 5 U.S.C. § 7102 are "tied to collective bargaining."  See Def.'s Mot., Ex. 1 (March

31, 2010 decision paper) at 7.  Section 7102 provides as follows:

> Each employee shall have the right to form, join, or assist any labor organization,
> or to refrain from any such activity, freely and without fear of penalty or reprisal,
> and each employee shall be protected in the exercise of such right. Except as
> otherwise provided under this chapter, such right includes the right—
>
> (1) to act for a labor organization in the capacity of a representative and the right,
> in that capacity, to present the views of the labor organization to heads of
> agencies and other officials of the executive branch of the Government, the
> Congress, or other appropriate authorities, and
>
> (2) to engage in collective bargaining with respect to conditions of employment
> through representatives chosen by employees under this chapter.

5 U.S.C. § 7102.  To be sure, an unfair labor practice charge premised on violations of § 7102(2)

would relate to "collective bargaining."  But the Union's charges here were based on the

prefatory language of § 7102, under which employees are guaranteed "the right to form, join, or

assist any labor organization . . . freely and without fear of penalty or reprisal."  Id.  As the

---

[7] According to the Under Secretary, the District of Columbia Circuit "previously addressed" the issue of whether unfair labor practice charges are part of the FSLMRS's general collective bargaining process in American Federation of Government Employees, Local 446 v. Nicholson, 475 F.3d 341 (D.C. Cir. 2007).  See Def.'s Mot., Ex. 1 (March 31, 2010 decision paper) at 7.  In particular, he quotes the following passage from Nicholson: "a decision under § 7422 (d) will settle a dispute over an arbitrator's jurisdiction, or . . . a dispute over the FLRA's authority to enforce an award in an [unfair labor practice] proceeding."  Nicholson, 475 F.3d at 343.  This language, however, has nothing to do with whether unfair labor practice charges implicate the collective bargaining process.  Rather, the court was explaining that the Secretary has jurisdiction to issue a § 7422(d) decision finding that a particular issue is excluded from collective bargaining even after an arbitrator has entered an award concerning that same issue.  See id. at 343-44.

structure of § 7102 indicates, the right to form, join, or assist a union without reprisal is broader than the right to engage in collective bargaining because the former right "includes" the latter right.  See id.  It follows, then, that alleged violations of the right to form, join, or assist a union without reprisal do not necessarily implicate the right to engage in collective bargaining.  Such is the case here, as the Union's unfair labor practice charges are based not on the Secretary's failure to engage in collective bargaining, but on alleged reprisal in violation of § 7102 for the nurses' testimony in support of the Union at the arbitration hearing.

The case upon which the Under Secretary principally relied in his March 2010 § 7422 Decision, United States Department of Veterans Affairs v. FLRA ("Amarillo"), 1 F.3d 19 (D.C. Cir. 1993), does not aid and, to an extent, undermines his conclusion.  The dispute at issue in Amarillo occurred before Congress's 1991 amendments to the VHA personnel statute. Accordingly, the Amarillo court noted at the beginning of its decision that VHA medical professionals "had no statutory right to engage in collective bargaining respecting the conditions of their employment" under the then-applicable law.  Id. at 21.  The Circuit proceeded to consider whether the FLRA exceeded its authority by ordering the Secretary to provide a union with minutes of clinical staff meetings involving VHA medical professionals pursuant to 5 U.S.C. § 7114(b)(4)(B), id. at 22-23, a provision of the FSLMRS requiring agencies to furnish labor organizations with "data . . . necessary for . . . discussion, understanding, and negotiation of subjects within the scope of collective bargaining," 5 U.S.C. § 7114(b)(4)(B) (emphasis added). The FLRA defended its decision by contending that "the right to information secured by 5 U.S.C. § 7114(b)(4) may be grounded on the full range of a union's representational activities, and is not confined to the negotiation and enforcement of collective bargaining agreements." Amarillo, 1 F.3d at 22.  The Circuit rejected this position, finding it "incompatible with a

statutory text" that ties the information right of § 7114(b)(4)(B) to collective bargaining.  Id.

Because "the existence or requirement of collective bargaining [was] critical to the information

right described in 5 U.S.C. § 7114(b)(4)(B)," and "[b]ecause the VA medical personnel . . . had

no information-rights-generating collective bargaining agreement with the agency, and no

statutory right to engage in bargaining," the court concluded that "the FLRA's order [was]

unauthorized by the FSLMRS."  Id. at 23 (footnote omitted).

Amarillo provides no support for the Under Secretary's March 2010 § 7422 Decision for

several reasons.  First, Amarillo is distinguishable from this case: whereas the Circuit in

Amarillo interpreted a FSLMRS provision that explicitly tied a union's right to obtain

information to the collective bargaining process, here the Union's unfair labor practice charges

allege violations of FSLMRS rights that, as explained above, are detached from collective

bargaining.  Moreover, an observation made by the Amarillo court, albeit in dicta, undercuts the

Under Secretary's construction of the VHA personnel statute and the FSLMRS.  Commenting on

the scope of VHA medical professional's labor rights, the Circuit noted that "[a]lthough Title 38

employees had no statutorily-protected right to negotiate collective bargaining agreements [under

the then-applicable law], or to administer such agreements through grievance arbitration

procedures, they had and retain other rights protected by the FSLMRS, including 'the right to

form, join, or assist a labor organization without fear of penalty or reprisal.'"  Id. at 21 (emphasis

added) (quoting United States Dep't of Veterans Affairs, 40 F.L.R.A. 290, 301 (1991)).  This

statement suggests, consistent with this Court's findings, that the right of collective bargaining

under the FSLMRS is indeed distinct from the FSLMRS right at issue here—to form, join, or

assist a union without reprisal.  Thus, the Under Secretary's reliance on Amarillo is unavailing.

Similarly unpersuasive is the Under Secretary's bare conclusion that "the provisions of the FSLMRS cannot trump 38 U.S.C. § 7422 because where, as here, the provisions of the FSLMRS conflict with the provisions of Title 38, the Title 38 provisions control." See Def.'s Mot., Ex. 1 (March 31, 2010 decision paper) at 8 (citing 38 U.S.C. § 7425(b)). It is true that, under § 7425(b) of the VHA personnel statute, "no provision of [the FSLMRS] or any other law pertaining to the civil service system <u>which is inconsistent with</u>" the VHA personnel statute "shall be considered to supersede, override, or otherwise modify" that statute, absent an express statement of such intent. 38 U.S.C. § 7425(b) (emphasis added). Yet neither the Under Secretary in his March 2010 § 7422 Decision nor the Secretary before this Court has explained how permitting the Union to pursue its unfair labor practice charges under the FSLMRS would be "inconsistent with" any provision of the VHA personnel statute. Nor does the Court discern such a statutory conflict, given that the Union's charges do not relate to excludable matters of collective bargaining within the meaning of § 7422(b).[8]

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the Under Secretary erred in determining that the Union's unfair labor practice charges relate to matters of "collective

---

[8] It bears emphasizing that this Memorandum Opinion in no way addresses the scope of the FSLMRS's applicability to VHA medical professionals, an issue that appears to be unresolved in this Circuit. See Amarillo, 1 F.3d at 21 (noting in dicta that VHA medical professionals are generally entitled to rights under the FSLMRS unrelated to collective bargaining, including the right to "form, join, or assist" a union without reprisal); Nat'l Fed'n of Fed. Emp.'s, Local 589 v. FLRA, 73 F.3d 390, 393-94 & n.11 (D.C. Cir. 1996) (holding that the Secretary has "complete discretion" to promulgate regulations concerning VHA medical professionals' conditions of employment notwithstanding any provision of the FSLMRS, but stating in a footnote that "[b]ecause the Secretary has exercised his plenary authority to prescribe regulations contrary to [5 U.S.C.] § 7114(a)(2)(B), we have no occasion to address whether [VHA medical professionals] would have [FSLMRS] rights in the absence of a regulation" and citing Amarillo). Other courts have presumed that the FSLMRS applies to VHA medical professionals in the absence of an overriding provision of law. E.g., James v. Von Zemenszky, 284 F.3d 1310, 1320 (Fed. Cir. 2002); Am. Fed'n of Gov't Emp.'s, Local 3884 v. FLRA, 930 F.2d 1315, 1324 (8th Cir. 1991). Nevertheless, the Court's review here is limited to whether the Under Secretary exceeded his statutory authority under 38 U.S.C. § 7422(d). Whether the VHA medical professionals in this case are entitled to FSLMRS rights is a question reserved for the FLRA in its adjudication of the Union's pending unfair labor practice charges.

bargaining" as that term is used in the FSLMRS and 38 U.S.C. § 7422.  As a result, the Under

Secretary exceeded his statutory authority under 38 U.S.C § 7422(d) by applying to the Union's

charges the § 7422(b)(1) collective bargaining exclusion for matters concerning "professional

conduct or competence."  Because this Court is obligated under the APA to "hold unlawful and

set aside agency action, findings, and conclusions. . . in excess of statutory . . . authority," 5

U.S.C. § 706(2)(C), the Court denies the Secretary's motion to dismiss or, in the alternative, his

motion for summary judgment, and grants in part and denies in part the Union's cross-motion for

summary judgment.  Specifically, the Union's cross-motion for summary judgment is granted as

to Count I of the first amended complaint (seeking relief under 5 U.S.C. § 706(2)(C)), and thus

the Under Secretary's March 31, 2010 decision paper is vacated.  Regarding the Union's request

for attorney's fees and costs, the Union shall file a motion setting forth its entitlement to such

relief, if any, on or before December 2, 2011.  The balance of the Union's cross-motion for

summary judgment is denied as moot.

   **SO ORDERED** this 2nd day of November, 2011.[9]


                                        REGGIE B. WALTON
                                        United States District Judge

---

[9]  The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.